UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Debtor, ) | |
| ) | |
| REYNAL CALDWELL, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | Case No. 4:14-CV-1306-JAR |
| ) | |
| ALAN E. DEWOSKIN, et al., ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on appeal from a Bankruptcy Court order denying debtor Reynal Caldwell's motion for summary judgment and granting summary judgment *sua sponte* in favor of Defendants Alan E. DeWoskin, Alan E. DeWoskin, P.C., and Theresa Caldwell Lavender on debtor's Complaint for Violation of the Automatic Stay. (Doc. No. 4)[1] For the following reasons, the Court affirms.

### Background

The following facts are undisputed by the parties. On May 30, 2008, debtor Reynal Caldwell ("Caldwell") filed a petition for dissolution of his marriage to Defendant Theresa Caldwell Lavender ("Lavender") in the St. Louis City Circuit Court, Cause Number 0822-FC00885. Defendants Alan E. DeWoskin and Alan E. DeWoskin, P.C. (collectively "DeWoskin"), represented Lavender in the dissolution. A Judgment of Dissolution of Marriage

---

[1] Defendants have requested oral argument. (Doc. No. 10 at 36) Finding that the issues have been extensively briefed and that oral argument would not assist the Court, the request is denied.

1

was entered on December 2, 2009 and later amended on February 22, 2010. Pursuant to that order, Caldwell was ordered to pay Lavender $2,500 per month in maintenance, $3,000 on a U.S. Bank credit card debt, $5,544.75 in attorney's fees to Alan E. DeWoskin, P.C., and to pay or refinance the loans on property he owned. On April 6, 2010, Lavender filed a motion in state court seeking to hold Caldwell in contempt for non-compliance with the Judgment of Dissolution. On April 20, 2010, Caldwell appealed the judgment of dissolution.

On July 16, 2010, following a hearing, the trial court found Caldwell in contempt and ordered him to pay Lavender $20,000 plus 9% interest for monthly maintenance payments accrued from December 2, 2009 to July 2010, to pay or refinance the loans on the property Caldwell owned (totaling over $243,000), to pay the $3,000 debt on the U.S. Bank credit card, and to pay Lavender's attorney's fees in the amount of $5,544.75 with 9% interest from December 2, 2009 and an additional $1,935.50 in attorney's fees, all no later than August 10, 2010. On August 11, 2010, after Caldwell had still not paid, DeWoskin requested the trial court hold a hearing on August 24, 2010 to determine whether a warrant and commitment order for Caldwell should issue for his failure to comply with the court's July 16, 2010 order.

On August 17, 2010, Caldwell filed a Chapter 13 bankruptcy case, *In re Reynal L. Caldwell*, Cause No. 10-49337-399, in the Bankruptcy Court for the Eastern District of Missouri. He also filed a suggestion of bankruptcy in the state court proceedings, Cause Number 0822-FC00885, and notified Defendants.

At the August 24, 2010 hearing, the trial court heard argument from the parties as to whether the automatic stay applied to the contempt proceedings. The trial court continued the matter to August 27, 2010, at which time it entered a Judgment of Contempt and Commitment Order, finding Caldwell guilty of indirect civil contempt and committing him to the St. Louis

2

City jail until he had purged himself of the contempt. The contempt order only required compliance with the maintenance obligations owed to Lavender. Caldwell posted bond on August 28, 2014, but did not pay for the bond with his own money or property.

On September 14, 2010, the trial court held another hearing and instructed Caldwell to either make the next maintenance payment due on September 15 or the court would hold an emergency contempt hearing. On September 16, 2010, Caldwell appealed the judgment of contempt.

On or about October 5, 2010, Defendants requested the trial court issue a wage withholding directed to the Defense Finance Accounting Service (DFAS) to collect current spousal support. On November 9, 2010, Caldwell posted a $25,000 appeal bond in the registry of the state court to stay collection of the judgment for maintenance arrearages pending the outcome of his appeal of the judgment of dissolution. Again, Caldwell did not pay for the bond with his own money or property. The court stayed the wage withholding application the same day. On March 22, 2011, the Missouri Court of Appeals affirmed the decree of dissolution. Caldwell v. Caldwell, 336 S.W.3d 201 (Mo.Ct.App. 2011). On April 28, 2011, Defendants requested and were granted a payout order on the $25,000 bond to be paid to Lavender.

On May 17, 2011, the Missouri Court of Appeals reversed the judgment of contempt entered against Caldwell, holding that the trial court had abused its discretion in failing to find that Caldwell had the ability to pay. Caldwell v. Caldwell, 341 SW 3d 734, 737 (Mo.Ct.App. 2011). Caldwell argued the automatic stay had been violated; however, the appellate court specifically stated it did not need to address the issue related to the automatic stay. Id. In so doing, the appellate court left in effect the trial court's determination that the automatic stay did not apply.

Caldwell's bankruptcy case was dismissed on July 20, 2011 and closed on August 4, 2011. The bankruptcy trustee paid out $6,972.00, including interest, to Lavender on the domestic support arrearage.

On January 11, 2013, Caldwell filed a complaint for violation of the automatic stay in the District Court for the Eastern District of Missouri, Cause No. 4:13CV00054CDP. Caldwell alleged that Defendants committed civil contempt[2] and violated the automatic stay statute, 11 U.S.C. § 362, when they prosecuted a motion to enforce the civil contempt order issued against him and filed wage withholding applications and a payout order for maintenance and attorney's fees. While the case was pending in the District Court, Defendants moved to dismiss Caldwell's complaint for, *inter alia*, lack of subject matter jurisdiction based on the Rooker-Feldman doctrine, and the issue was fully briefed by the parties. Alternatively, Defendants requested the matter be referred to the Bankruptcy Court. The District Court granted the motion in part and referred the case to the Bankruptcy Court.

Thereafter, Defendants moved to dismiss Caldwell's complaint on the grounds of laches, comity with state courts and failure to state a claim. The Bankruptcy Court denied the motion, and Defendants filed their Answer and Affirmative Defenses, including the affirmative defenses of res judicata and the Rooker-Feldman doctrine. Caldwell then moved for summary judgment on the issue of liability. Defendants referenced the application of Rooker-Feldman in their response to Caldwell's motion.

On June 27, 2014, the Bankruptcy Court denied Caldwell's motion for partial summary judgment on the question of liability and granted, *sua sponte*, summary judgment in favor of

---

[2] Because Caldwell offered no facts or legal argument in his motion for summary judgment to support his contempt claim, and did not address it in his appellate brief, the Court finds Caldwell has abandoned his contempt claim.

4

Defendants on Caldwell's complaint "in that [Caldwell's] complaint for violation of the automatic stay shall be dismissed." (Doc. No. 1-6 at 15) The Court held it was barred under the Rooker-Feldman doctrine from considering whether the automatic stay applied to Defendants' actions. The Court further held that the wage withholding requests were exempt from the automatic stay under § 362(b)(2)(C) because they were for payment of current spousal support, a "domestic support obligation" under Bankruptcy Code § 101(14A). The payout order of the $25,000 bond was also held exempt under § 362(b)(2)(B) because the money came from Caldwell's friends; it was not his property or the property of his bankruptcy estate. Finally, the Bankruptcy Court held that Caldwell himself had committed a stay violation when he appealed the state court's ruling post-bankruptcy petition. Caldwell filed a motion for reconsideration and the issues were briefed. On July 10, 2014, the Bankruptcy Court denied Caldwell's motion to reconsider. Caldwell filed his Notice of Appeal on July 22, 2014.[3]

**Standard of review**

When a debtor appeals a bankruptcy court's order to a district court, the district court reviews the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. In re Tasic, 2013 WL 2425133, at *3 (E.D. Mo. June 4, 2013) (citing In re O'Brien, 351 F.3d 832, 836 (8th Cir. 2003)). Issues committed to the bankruptcy court's discretion are reviewed for an abuse of that discretion. Id. (citing In re Zahn, 526 F.3d 1140, 1142 (8th Cir.2008)). A bankruptcy court's ruling will not be reversed unless there is "a 'definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a

---

[3] On August 15, 2014, Caldwell filed, without leave, an amendment to Section I.C of Appellant's Brief as to Related Cases (Doc. No. 9) seemingly to suggest this matter be transferred to the Judge who presided over the case originally. This case was filed in the District Court before Judge Perry and transferred to the Bankruptcy Court. This appeal was randomly assigned pursuant to the Court's operating procedures.

weighing of the relevant factors.'" In re Carter, 502 B.R. 333, 336 (8th Cir. BAP 2013) (quoting Apex Oil Co. v. Sparks (In re Apex Oil Co.), 406 F.3d 538, 541 (8th Cir. 2005)).

The instant case was decided by a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. " 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

6

facts are jury functions, not those of a judge.' " Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

**Discussion**

Caldwell raises three points on appeal:

1. The Court erred in granting summary judgment to Defendants under the Rooker-Feldman Doctrine.

2. The Court erred in granting, *sua sponte*, summary judgment to Defendants without providing Caldwell notice or opportunity to respond.

3. The Court erred in denying summary judgment to Caldwell.

(Doc. No. 6 at 5-6)

**1. Application of Rooker-Feldman**

The Rooker–Feldman doctrine[4] recognizes that only the United States Supreme Court has jurisdiction to review a state court decision. Dodson v. University of Ark. for Med. Sciences, 601 F.3d 750, 754 (8th Cir. 2010); Friends of Lake View Sch. District v. Beebe, 578 F.3d 753, 758 (8th Cir.2009). Under Rooker-Feldman, federal district courts lack subject matter jurisdiction over appeals from state court decisions and general federal claims that are "inextricably intertwined" with specific claims already adjudicated in state court. Ace Construction v. City of St. Louis, 263 F.3d 831, 832 (8th Cir. 2001). A general federal claim is inextricably intertwined with a state court decision "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." Id. See also Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1035 (8th Cir. 1999) (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir.1995)); Robins v. Ritchie, 631 F.3d 919, 925 (8th Cir. 2011). "If the federal court can only

7

provide relief by determining that the state court was wrong, it is, in effect an appeal of the state court judgment which is prohibited." Ace, 263 F.3d at 832 (citing Lemonds v. St. Louis County, 222 F.3d 488, 493 (8th Cir. 2000)). Because the Rooker-Feldman is jurisdictional, its application is not discretionary and the court must invoke the doctrine *sua sponte*. In re Burns, 306 B.R. 274, 277 (Bankr. E.D.Mo. 2004).

Caldwell alleged violations of the automatic stay statute, 11 U.S.C. § 362(a), by Defendants. The filing of a bankruptcy petition automatically stays a variety of acts to collect or otherwise enforce a pre-petition debt. If a creditor violates the automatic stay, the debtor is entitled to recover actual damages, including costs and attorney fees, and may, depending on the circumstances, also recover punitive damages. 11 U.S.C. § 362(k). To prevail under § 362(k), the debtor must show: (1) the creditor violated the automatic stay; (2) the violation was willful; and (3) the debtor was injured by the violation. See Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir.1991). A violation is willful "when the creditor acts deliberately with knowledge of the bankruptcy petition." Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir.1989).

The Bankruptcy Court held it was barred by Rooker-Feldman from considering whether the automatic stay even applied to Defendants' attempts to enforce Caldwell's obligations in the state court because that issue had been "thoroughly presented and argued before the state court by the parties," and decided by the state court. (Appellant's Appendix to Brief ("App."), Doc. No. 6-2 at 724-725)

---

[4] The doctrine derives from the cases of Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923) (state court judgment is effective and conclusive adjudication) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983) (lower federal court has no authority to review final judgment of state court).

8

At the August 24, 2010 hearing, DeWoskin acknowledged receiving notice of Caldwell's bankruptcy filing but requested the state court rule on whether it had the right to enforce its previous contempt order of July 16, 2010 in light of the automatic stay statute, citing Lowery v. McIlroy & Millian (In re Lowery), 292 B.R. 645, 649 (Bankr.E.D.Mo. 2003). (August 24, 2010 transcript, Doc. No. 6-2 at 685 (42:23-43:7)). "[W]e are here seeking the court to enforce the dignity of its prior order which held Dr. Caldwell in contempt prefiling of the Chapter 13 wage earner plan." (Id. at 42:4-7) The state court continued the matter to August 27, 2010 to review the case law and precedent of the bankruptcy court on the issue. (Id. at 48:12-49:8)

On August 27, 2010, the state court heard argument from Caldwell's counsel regarding the applicability of the automatic stay. The court ruled that the automatic stay was not applicable to the contempt charge and its proceedings, stating on the record:

> The court has listened to the argument of both the domestic attorney ... and the bankruptcy attorney ..., both present on behalf of [Caldwell]. The court has reviewed the statutes pertinent to this matter, and the bankruptcy code and statutes that [the bankruptcy attorney] provided to the court. The court does not share [the bankruptcy's attorney] opinion that this court cannot proceed because there was a stay filed by [Caldwell] in the bankruptcy court ... Having listened to argument of all counsel, and having reviewed this record and the pertinent statutes, the court does find that [Caldwell] is in contempt of this court.

(August 27, 2010 transcript, Doc. No. 6-2 at 690 (63:18-64:22)) The state court then entered its Judgment of Contempt and Commitment Order. (App. at 625-26) Thus, the Bankruptcy Court held that a ruling on Caldwell's claim under § 362(a) would effectively "void or reverse the decision by the state court that the automatic stay did not apply, an action I am not permitted to take according to the Rooker-Feldman doctrine." (App. at 726)

Caldwell argues that Rooker-Feldman does not bar his federal claim because the state court's judgment of contempt and commitment order was reversed on appeal, nullifying not only the judgment, but also any order based on the judgment, see Pottgen v. Missouri State High

9

School Activities, 103 F.3d 720, 724 (8th Cir. 1997); Strottman v. St. Louis, I.M. &S. Ry. Co., 128 S.W. 187 (Mo. 1910). (Doc. No. 6 at 21) More to the point, Caldwell argues the appellate court did not address the issue whether there was a violation of the automatic stay, leaving the question open to a decision from a federal court. (Doc. No. 6 at 18-20)

The Bankruptcy Court specifically addressed this argument in its summary judgment order and found "no basis upon which the ruling of the Missouri Court of Appeals, reversing the State Court's ruling on other grounds and specifically stating that [sic] court did not need to address the automatic stay argument, limits the applicability of the Rooker-Feldman doctrine to this action." (App. at 726 n. 1) This Court agrees. Because the appellate court did not address the issue of the automatic stay, the state court's determination that the stay did not apply remained in effect. In fact, certain actions were taken consistent with that determination and in furtherance of the court's orders, namely the wage withholding requests and payout order, which actions were not appealed by Caldwell. Further, by looking past the issue of the stay and addressing the lack of findings made by the state court regarding Caldwell's ability to pay, the appellate court implicitly decided that if appropriate findings had been made, then the judgment of contempt would have been upheld.

In sum, in order for Defendants' actions to be ruled an automatic stay violation, the Bankruptcy Court would have had to hold that the state court incorrectly determined the stay did not apply and overrule that determination. Therefore, Caldwell's claim was "inextricably intertwined" with the state court's decision and Rooker-Feldman deprived the Bankruptcy Court of subject matter jurisdiction over Caldwell's complaint. See Ferren v. Searcy Winnelson Co. (In re Ferren), 203 F.3d 559, 560 (8th Cir. 2000) and Singleton v. Fifth Third Bank of W. Ohio (In re

Singleton), 230 B.R. 533 (6th Cir. B.A.P. 1999). Accordingly, the Bankruptcy Court did not err in granting summary judgment to Defendants.

2. **Notice and opportunity to respond**

Next, Caldwell argues the Court erred in granting summary judgment to Defendants, the non-moving parties, without giving him notice and an opportunity to respond, particularly with regard to the Rooker-Feldman issue. (Doc. No. 6 at 21-24) While unusual, there are circumstances where entry of summary judgment *sua sponte* for the non-moving party is appropriate. Those circumstances exist here.

A district court clearly has the power to grant summary judgment *sua sponte* against the moving party, despite the lack of a cross-motion, "where the party against whom the judgment is entered has had a full and fair opportunity to contest that there are no genuine issues of material fact to be tried and the party granted judgment is entitled to it as a matter of law." Burlington Northern v. Omaha Public Power Dist., 888 F.2d 1228, 1231 n. 3 (8th Cir.1989) (internal citations omitted). See also, Acton v. City of Columbia, Mo., 436 F.3d 969, 975 n.5 (8th Cir. 2006); Chrysler Credit Corp. v. Cathey, 977 F.2d 447, 449 (8th Cir. 1992) (affirming a district court's sua sponte grant of summary judgment where the non-moving party's "right to judgment turned on the same issue as [the moving party's] right to judgment."); Johnson v. Bismarck Public School Dist., 949 F.2d 1000, 1004–05 (8th Cir.1991) (citing 6 Moore's Federal Practice § 56.12 at 56-162 & n.5 (1991)). When a district court's *sua sponte* determination is based on issues identical to those raised by a moving party, the risk of prejudice is significantly lowered because "the judge is already engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to

11

support or refute the request for the entry of judgment." 10A Wright, Miller & Kane, Federal Practice and Procedure § 2720 (3d ed.).

Under the circumstances of this case, the Court finds the entry of *sua sponte* summary judgment for Defendants was not error. There was no need for additional discovery to further develop the record as the facts have been admitted. Because there are no disputed facts and the issues are purely legal, the Court is satisfied that Caldwell had a full and fair opportunity to contest the appropriateness of summary judgment. His arguments were fully briefed before both the District Court and the Bankruptcy Court. The Bankruptcy Court found the determinative issue, whether the automatic stay applied, "was necessarily already raised and encompassed in the arguments by the parties." (Doc. No. 1-6 at 15) Defendants argued in their response to Caldwell's summary judgment motion that the state court ruled that the automatic stay did not apply; in footnote 3 of their response, Defendants noted the applicability of Rooker-Feldman. (Id. at 15 n. 2) The Bankruptcy Court further noted that the facts supporting its ruling were derived from the documents that were part of the summary judgment record, many of which were submitted by Caldwell, and that Caldwell had had ample notice and an opportunity to conduct discovery and make relevant legal arguments. (Id.) Finally, the Bankruptcy Court considered and ruled on Caldwell's motion for reconsideration, wherein he again raised and fully briefed the application of Rooker-Feldman.

### 3. Grant of summary judgment

Lastly, Caldwell argues the Bankruptcy Court erred in denying his motion for summary judgment on the issue of liability because the undisputed material facts showed he established the required elements for a §362 (k) recovery. (Doc. No. 6 at 24-31) While the Bankruptcy Court found the wage withholding and pay out order on an appeal bond did not violate the automatic

stay (Doc. No. 1-6 at 14),[5] Caldwell argues the Court did not address Defendants' pursuit of the judgment of contempt and motion for warrant and commitment, actions which, he argues, constituted a proceeding against a debtor and led to his incarceration, in violation of the automatic stay. (Doc. No. 6 at 26-27, 30-31) As support for his contention that Defendants' actions were both willful and malicious, Caldwell relies on Carver v. Carver, 954 F.2d 1573 (11th Cir. 1992), where the court found that by proceeding with a contempt action in state court to attempt collection of arrearages in support without requesting relief from the automatic stay, appellants had willfully violated the automatic stay.[6]

A debtor seeking to establish a violation of the automatic stay must establish that the defendant acted willfully in violation of the stay and that an injury resulted from that conduct. See In re Carter, 502 B.R. 333, 336 (8th Cir. BAP 2013). A willful violation of the automatic stay does not require a finding of specific intent; if the creditor is aware of the bankruptcy filing, any intentional act that results in a violation of the stay is willful. In re Gray, 519 B.R. 767 (8th Cir. BAP 2014). Here the Bankruptcy Court found Defendants had notice of Caldwell's bankruptcy filing and continued with the contempt proceedings.

---

[5] In his appellate brief, Caldwell notes "the collection of bond funds and the wage withholding from property of the estate may not have been a violation of the automatic stay." (Doc. No. 6 at 27) Although it is unclear whether Caldwell has abandoned this argument on appeal, Defendants address it. First, their wage withholding submissions requested only maintenance, which is exempt from the automatic stay pursuant to § 362(b)(2)(C) and the wage withholding application filed September 27, 2010 was cancelled. (App. at 636) (Doc. No. 10 at 30-32) Further, Defendants' collection of the payout order was for a domestic support obligation from property that Caldwell admitted was not his own; thus, it was not a violation of the automatic stay pursuant to § 362(b)(2)(B). (Doc. No. 10 at 33) The Court concludes there was no error in denying Caldwell's motion for summary judgment on these issues.

[6] Nevertheless the Eleventh Circuit indicated that the bankruptcy court should have ignored the violations and not have awarded any damage to the debtor since domestic relations law is a special category for determination by state courts. Because Carver hinges on the finding that domestic relations law is an exception to federal jurisdiction, it has been effectively overruled or substantially limited by Ankenbrandt v. Richards, 504 U.S. 689 (1992).

13

The question is whether Defendants' actions violated the automatic stay. The state court was within its jurisdiction to determine whether the automatic stay applied and did in fact determine that the stay did not apply to its contempt proceedings. (Doc. No. 10 at 24-26) See e.g., Siskin v. Kutner (In re Siskin), 258 B.R. 554, 562–563 (Bankr.E.D.N.Y.2001) (majority of jurisdictions have accepted that bankruptcy court has concurrent jurisdiction to decide applicability of automatic stay). That determination remained in effect after the Court of Appeals specifically did not address the issue. As discussed above, the Bankruptcy Court correctly ruled it could not revisit that determination under Rooker-Feldman. Thus, Caldwell's claim fails as a matter of law.

Even if the Bankruptcy Court had not relied on Rooker-Feldman as the basis for its ruling, summary judgment was appropriate under the facts of this case in that Defendants' actions were clearly not a violation of the automatic stay, but taken instead to enforce a prior court order. See Lowrey, 292 B.R. at 649-50. In its July 16, 2010 Judgment and Order of Contempt, the state court found that Caldwell was financially able to meet the financial obligations outlined in the Decree of Dissolution and amended Judgment and that his failure to comply with the court's orders was "willful, intentional and contumacious." (App., Doc. No. 6-2 at 621 ¶ 7) At the August 24, 2010 hearing, the state court stated on the record that "I just find it incredible that [Caldwell] has done absolutely nothing to comply with one order, let alone the entire judgment." (Transcript of August 24, 2010 hearing, App., Doc. No. 6-2 at 51 (49:12-140)) In its August 27, 2010 Judgment of Contempt, the state court sentenced Caldwell to imprisonment "to compel compliance with the Court's said orders …" (Id. at 626)

Moreover, it is clear to this Court that Caldwell's actions were taken to evade the state court's orders. Following the first contempt order entered July 16, 2010, Caldwell proceeded to

14

write letters to both DeWoskin and Lavender, stating his intent to pay only $1.00 "annually after New Years until the day I die." (Appendix to Appellee's Brief ("Appx."), Doc. No. 10-1 at 867-68) The following month, on August 17, 2010, he filed for bankruptcy, within days of receiving notice of a second contempt hearing scheduled for August 24, 2010. Once filed, the confirmation hearing was continued seven times although Caldwell failed to file any responses or amendments to address the bankruptcy trustee's objections. Caldwell then converted his case to Chapter 7 on May 25, 2011. Caldwell sought and obtained extensions of time for filing his Chapter 7 schedules, statement of affairs, and B22 form until June 29, 2011. On June 29, 2011, instead of filing the necessary documentation, Caldwell moved to re-convert his case to Chapter 13. The Bankruptcy Court denied the motion on July 19, 2011, finding a lack of good faith. (App., Doc. No. 6-2 at 666-67) Caldwell's bankruptcy case was dismissed on July 20, 2011 for failure to file one or more schedules and/or statement of affairs (id. at 669), all of which evidences his use of the bankruptcy court as a weapon to avoid his maintenance obligation. Caldwell's clear intent was to avoid and manipulate the legal system. The bankruptcy court recognized this in granting summary judgment to Defendants.

**Conclusion**

For these reasons, the Court concludes that the United States Bankruptcy Court for the Eastern District of Missouri correctly denied summary judgment to Caldwell and granted summary judgment *sua sponte* to Defendants. Therefore, the order will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED.**

An appropriate Judgment accompanies this Memorandum and Order.

Dated this 31st day of March, 2015.

                                            /s/ John A. Ross
                                            **JOHN A. ROSS**
                                            **UNITED STATES DISTRICT JUDGE**